Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

To: United States District Court for the Eastern District of Massachusetts
1 Courthouse Way Boston, Massachussetts Republic [02210]

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I-202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.*, 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** 2153CR000235

FILED IN CLERKS OFFICE
2021 MAR -9 AM 10:47
U.S. DISTRICT COURT
DISTRICT OF MASS.

Appellant, Plaintiff, Claimant
Rashad Bey Ex-Rel Anthony Guess

v.

Defendant(s)
Commonwealth of Massachusett

# NOTICE OF REMOVAL

**Date:** March 4, 2021

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971)*:

> *"...when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."*

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:

> **Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

...

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction: The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html

*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any*



*disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956  Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

> **United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**
>
> *Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*
>
> *Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*
>
> *Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14[th] amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st

Case 1:21-cv-10410-ADB   Document 1-1   Filed 03/09/21   Page 4 of 4

Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco, I am: ___Rashad Bey___. In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.

Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*